**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-00268-PAB-GPG

BERNARDO MEDINA,

      Plaintiff,

v.

CHRISTOPHER DANAHER, in his individual capacity,
JOHN/JANE DOES 1-7 or more, all in their individual capacities,

      Defendants.

---

**MOTION FOR SUMMARY JUDGMENT**

---

      Plaintiff Bernardo Medina ("Plaintiff") alleges that Deportation Officer ("DO") Danaher detained him in violation of his constitutional rights, specifically, the Fourth Amendment right against unlawful search and seizure, and the Fifth Amendment rights to due process and equal protection. Plaintiff brings his claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

      In order to prevail in this case, Plaintiff must show that: (1) a *Bivens* remedy exists against DO Danaher, *and* (2) DO Danaher is not entitled to qualified immunity. Plaintiff can do neither. He cannot show that a *Bivens* remedy exists because this case is different from the three situations in which the Supreme Court has found *Bivens* remedies and special factors counsel against creating a new *Bivens* remedy here. And DO Danaher is entitled to qualified immunity because Plaintiff cannot show that DO Danaher violated a clearly established constitutional right.

**Statement of Undisputed Material Facts**

1. In 2014 and 2015, Defendant Danaher was a Deportation Officer assigned to the Alamosa office of Immigration and Customs Enforcement ("ICE"). Ex. 1 (Danaher Deposition) at 6:24-7:5.

2. At that time, DO Danaher had worked for ICE for about ten years. Ex. 1 at 6:13-15.

3. On September 26, 2014, DO Danaher was informed by the Gunnison County Sheriff's Department that it had arrested Plaintiff for driving under the influence. Ex 1 at 10:21-11:24; Ex. 2 (Danaher Decl.) at ¶ 1.

4. The Sheriff's Department faxed DO Danaher two documents related to Plaintiff: a "Detained Alien Status Inquiry Form" and a "Custody Report." Ex. 1 at 14:18-23; Ex. 2 at ¶¶ 2-3 (identifying and authenticating).

5. The first listed Plaintiff's place of birth as Mexico, and the second listed his place of birth as Nayarit, Mexico; both listed his date of birth as May 31, 1994. Ex. 3 (Detained Alien Status Inquiry Form); Ex. 4 (Custody Report).

6. One of the facts DO Danaher relies on in determining the legal status of a person is documentation received from local law-enforcement agencies. Ex. 2 at ¶ 4.

7. As an ICE employee, DO Danaher has received documentation hundreds of times from local law-enforcement officials with data about a person's place of birth. Ex. 2 at ¶ 5.

8. DO Danaher's experience and training is that information in documentation received from local law-enforcement officials regarding a person's place of birth is reliable. Ex. 2 at ¶ 6.

9. After DO Danaher received the documents about Plaintiff the Gunnison County Sherriff's Department, DO Danaher checked the National Crime Information Center ("NCIC") database from the FBI for information about Plaintiff using his name and date of birth as they appeared on the documents I received from the Sheriff's Department. Ex. 2 at ¶ 7.

10. The NCIC data reviewed by DO Danaher on or about November 3, 2014, listed Plaintiff's place of birth and citizenship as Mexico. Ex. 2 at ¶ 10; Ex. 5 (November 2014 NCIC data at CD0003-5); Ex. 2 at ¶ 9 (authenticating November 2014 NCIC data).

11. As an ICE employee, DO Danaher has received and reviewed NCIC data hundreds of times to investigate an individual's place of birth and citizenship. Ex. 2 at ¶ 11.

12. DO Danaher's experience and training is that NCIC data regarding a person's date of birth is reliable. Ex. 2 at ¶ 12.

13. After DO Danaher received the documents about Plaintiff the Gunnison County Sherriff's Department, DO Danaher also checked the Central Index System ("CIS") for information about Plaintiff. Ex. 1 at 25:2-8, 25:24-26:6.

14. The CIS is maintained by the U.S. Citizenship and Immigration Services and maintains a record of aliens in the United States, including lawful permanent residents and others with a legal status in the United States. Ex. 1 at 25:5-8. *See also* https://www.dhs.gov/publication/dhsuscispia-009-central-index-system (description of CIS).

15. If Petitioner were born in Mexico or a citizen of Mexico, as the Gunnison County Sheriff's records and the NCIS data showed, and he had a legal status in the United States, DO Danaher would have expected to have found an entry for Plaintiff in the CIS because CIS records aliens with a legal status in the United States. Ex. 2 at ¶ 13.

16. DO Danaher did not find Plaintiff listed in the CIS.  Ex. 2 at ¶ 13.

17. Based upon DO Danaher's experience and training, the lack of an entry in CIS for Plaintiff combined with the evidence of Plaintiff's birth in Mexico and Mexican citizenship led him to believe that Plaintiff was an alien unlawfully present in the United States.  Ex. 2 at ¶ 15.

18. DO Danaher reached that conclusion before he detained Plaintiff.  Ex. 2 at ¶ 16.

19. After Plaintiff was arrested on September 26, 2014, DO Danaher monitored Plaintiff's state-court case.  Ex. 2 at ¶ 18.

20. Plaintiff pleaded guilty on December 16, 2014, to driving under the influence for the September 26, 2014 incident.  Ex. 6 (Docket, Case No. 2014M237) at 2.

21. On January 27, 2015, Plaintiff appeared at the Gunnison County Courthouse for a hearing stemming from his September 2014 arrest for driving under the influence.  Ex. 7 (Plaintiff Deposition) at 22:13-23:11.

22. After Plaintiff exited the Gunnison County Courthouse, he was detained by DO Danaher and another ICE officer.  Ex. 2 at ¶ 18.

23. The only documentation Plaintiff presented DO Danaher when he was detained on January 27, 2015, was a Colorado Identification card.  Ex. 2 at ¶ 19.

24. DO Danaher possessed a valid arrest warrant for Plaintiff on January 27, 2015.  Sch. Order Undisputed Fact 7.  ECF No. 60 at 4.

25. After Plaintiff was detained on January 27, 2015, he was transported to the Alamosa ICE office.  Ex. 2 at ¶ 20.

26. At the Alamosa ICE office, DO Danaher interviewed Plaintiff.  Ex. 1 at 50:23-52:19.

27. On January 27, 2015, DO Danaher queried NCIC for data on Plaintiff.   Ex. 2 at ¶ 21.

28. The NCIC data obtained by DO Danaher on January 27, 2015, lists Plaintiff's place of birth as Mexico and his citizenship as Mexican. Ex. 2 at ¶ 23; Ex. 8 (January 2015 NCIC data); Ex. 2 at ¶ 22 (authenticating January 2015 NCIC data).

29. DO Danaher had no contact with Plaintiff after Plaintiff left the Alamosa ICE Office on January 27, 2015. Ex. 2 at ¶ 24.

30. DO Danaher did not make any decisions regarding Plaintiff's detention after Plaintiff left the Alamosa ICE Office on January 27, 2015. Ex. 2 at ¶ 25.

31. Plaintiff was transferred from the Alamosa ICE Office on the evening of January 27, 2015, to a jail in Colorado Springs. Ex. 7 at 31:25-32:6.

32. Plaintiff was transferred to the GEO Detention Center in Denver on January 29, 2015, and was released from ICE custody on January 30, 2015. Am. Cmplt. ECF No. 26 ¶¶ 29, 39.

**Disputed but not Material Facts**

As shown above, the undisputed material facts are that at the time DO Danaher detained Plaintiff on January 27, 2015, DO Danaher had two documents from the Gunnison County Sheriff and one FBI document saying that Plaintiff was born in Mexico and a citizen of Mexico. DO Danaher also knew that Plaintiff did not appear in the CIS, as Plaintiff would have if he was born in Mexico and had a legal status in the United States. There are also some disputed, although not material, facts. DO Danaher has testified that he called Plaintiff at the Gunnison Sherriff's jail when Plaintiff was detained in September 2014, and Plaintiff said he was born in Mexico and did not have a legal status in the United States. Ex. 1 at 16:22-17:17. DO Danaher also testified that Plaintiff told him the same when DO Danaher detained him on January 27, 2015, and when DO Danaher questioned him again at the Alamosa ICE office. Ex. 1 at 42:18-25, 52:3-12. Plaintiff

disputes that testimony. Ex. 7 at 28:15-18; 31:1-9; 35:14-19. Those disputed facts are not material to this motion because even if they were true, DO Danaher would still be entitled to summary judgment

**Argument**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "In so doing, a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Alder v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citations omitted). Once the moving party meets its burden, the nonmoving party must come forth with specific facts showing a genuine issue for trial. *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).

**I.     There is no *Bivens* remedy.**

Plaintiff's *Bivens* claims allege violations of the Fourth Amendment right against unlawful search and seizure, and the Fifth Amendment rights to due process and equal protection. To prevail, Plaintiff must first show that *Bivens* remedies exist for those alleged constitutional violations. He cannot do so because his *Bivens* claims arise in a new context, there are alternative remedies, and special factors counsel hesitation in creating a new *Bivens* remedy.

**a.   The *Bivens* claims here arise in a new context.**

In *Ziglar v. Abbasi*, the Supreme Court held that whenever a "case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." 137 S. Ct.

1843, 1859, 1864 (2017).  When the context is new, the reviewing court must determine whether it is appropriate to imply a new *Bivens* remedy before allowing the case to proceed.  *Id.*  Under *Abbasi*, the claims against DO Danaher constitute a new *Bivens* context, thus requiring a full analysis into whether a *Bivens* remedy should be implied.  Because there are alternative remedial processes and special factors counseling hesitation against implying a *Bivens* remedy, the Court should not recognize a *Bivens* claim against DO Danaher.

In conducting the new-context analysis, a court must consider whether the claim asserted extends, however modestly, any of the three specific *Bivens* claims approved by the Supreme Court.  *Id.* at 1864 ("even a modest extension is still an extension").  The three prior cases in which the Supreme Court recognized a damages remedy against federal officials are:  (1) *Bivens,* 403 U.S. 388 (damages for Fourth Amendment violations for unreasonable search and seizure); (2) *Davis v. Passman*, 442 U.S. 228 (1979) (damages remedy for Fifth Amendment violation of the equal-protection component of the Due Process Clause in connection with alleged gender discrimination); and (3) *Carlson v. Green*, 446 U.S. 14 (1980) (damages for Eighth Amendment violation for failure to provide adequate medical treatment).  *Abbasi*, 137 S. Ct. at 1855.

The Supreme Court's non-exhaustive list of examples of new contexts shows that small differences matter.  A new context might be found, for example,

> because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1860.

A *Bivens* remedy for ICE officers enforcing immigration law has been found to be a new

context by at least one circuit court since the *Abbasi* decision. In considering whether to create a *Bivens* remedy for a group of aliens and a U.S. citizen alleging violations of their Fourth and Fifth Amendment rights, the Fourth Circuit held that ICE officers enforcing immigration law was a new context. *Tun-Cos v. Perrotte*, 922 F.3d. 514, 523-525 (4th Cir. 2019). First, the "statutory or other legal mandate under which the officer[s] [were] operating" is different. *Id.* at 523 (quoting *Abbasi*, 137 S. Ct. at 1860) (brackets in original). Although the plaintiffs in *Tun-Cos* argued that their situation was analogous to the *Bivens* Fourth Amendment context because ICE officers are also federal law-enforcement officers, the Fourth Circuit found that argument unpersuasive and held that arguing at that general level "ignores the language of *Abbasi* [and] also fails to appreciate the substantively distinct aspects of immigration enforcement." *Id.* at 524. Specifically, enforcement of criminal law, as in *Bivens*, is different from the enforcement of immigration law. *Id.* Second, the Fourth Circuit found a new context because "plaintiffs seek to extend *Bivens* liability to a new category of defendants—ICE agents, who are charged with the enforcement of the immigration laws." *Id.* As part of the new-context analysis, the *Abbasi* court "refused to extend *Bivens* to any … *new category* of defendants." *Id.* (citing *Abbasi*) (emphasis in original).

Plaintiff's Fifth Amendment due-process and equal-protection claims are also new contexts. The Supreme Court has never recognized a Fifth Amendment due-process claim, and the only time it recognized a Fifth Amendment equal-protection claim was for a congressional staffer alleging gender discrimination against a congressman in *Davis*, a very different context from this case. *Davis*, 442 U.S. 228

In conclusion, the context of this case is different from the three cases in which the Supreme Court has approved *Bivens* remedies.

**b.  The Court should not create a *Bivens* cause of action in this new context**.

Because Plaintiff's *Bivens* claims arise in a new context, this Court must next determine whether to imply a new *Bivens* remedy in this new context.  *Abassi*, 137 S. Ct. at 1859. 1864.  In conducting that analysis, this Court should consider "that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Abbasi*, 137 S. Ct. at 1857.  The Supreme Court now recognizes, as a matter of separation of powers, that Congress, and not the courts, should generally devise any causes of action and remedies for constitutional violations.  *Id.* at 1856-57.  As the Supreme Court summarized, "The question is who should decide whether to provide for a damages remedy, Congress or the courts?  The answer most often will be Congress."  *Id.*  (internal quotation marks and citation omitted).

The inquiry as to whether to devise a new *Bivens* remedy contains two components:  first, whether there is any alternative remedial process; and second, whether any special factors counsel hesitation before authorizing a new kind of federal litigation.  *Id.* at 1858-1860; *see also Wilkie v. Robbins*, 551 U.S. 537, 549-550 (2007).  The Supreme Court made clear that either step alone may prevent devising a new remedy.  *Abbasi*, 137 S. Ct. at 1858-1860; *Wilkie*, 551 U.S. at 550.  Plaintiff cannot make either showing here and thus his claims must fail.

**i.  There are alternative remedies.**

The Immigration and Naturalization Act ("INA") provides alternative remedies.  As the Fourth Circuit recognized, the INA does so by: providing "standards for enforcement activities" in 8 C.F.R. § 287.8;[1] providing for an "[e]xpedited internal review process" for alleged violations of

---

[1] 8 C.F.R. § 287.8(c)(2)(i) provides ICE officers with the authority to arrest when he or she "has reason to believe that the person to be arrested …is an alien illegally in the United States."  This is the authority DO Danaher had to detain Plaintiff.

the standards of 8 C.F.R. § 287.8 in 8 C.F.R. § 287.10, which allows any person to make a complaint; allowing persons detained under the INA to have an adversarial bond hearing and right to appeal in 8 C.F.R. § 1003.38; allowing for an adversarial removal hearing in 8 U.S.C. § 1229a(b); and allowing for judicial review of removal orders in 8 U.S.C. § 1252. *Tun-Cos*, 922 F.3d. at 526. These remedies are for U.S. citizens and aliens. For example, the INA specifically provides for review of claims to U.S. nationality claims in removal proceedings in 8 U.S.C. § 1252(b)(5), which provides that if a person subject to a removal order claims to be a U.S. national, the court of appeals or district court may decide that issue. If the INA did not apply to U.S. citizens, such a provision would not be necessary. Therefore, Congress has provided persons, like Plaintiff, the chance to assert a claim to U.S. citizenship and have that claim determined within the INA, thus providing an alternative remedy. *See Turner v. U.S.*, No. 4:13-cv-932, 2013 WL 5877358, at *7 (S.D. Tex. Oct. 31, 2013) (recognizing alternative remedies for U.S. citizen negating creation of a *Bivens* remedy including a live hearing on removability and review of claim to U.S. citizenship in court of appeals under 8 U.S.C. § 1252(b)(5)(A)).

### ii. There are special factors counseling hesitation.

Special factors counsel hesitation in creating a new *Bivens* remedy, disfavoring the creation of a *Bivens* remedy here. The special-factor inquiry "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1858. A "special factor" is any factor that "cause[s] a court to hesitate" before concluding that it, rather than Congress, should devise a damages remedy. *Id.*

Courts have recognized that a number of special factors counsel against creating a *Bivens* remedy against ICE officers enforcing immigration law. As an initial matter, as the Fourth Circuit

has observed, "immigration enforcement is 'a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress wants the Judiciary to interfere.'" *Tun-Cos*, 922 F.3d. at 526 (quoting *Abbasi*, 137 S. Ct. at 1858). Congress has regulated how persons claiming U.S. citizenship and detained by ICE officials could assert their citizenship claims, as described in the alternative remedies section above.

The Fourth Circuit also noted that Congress's frequent amendments to the INA—without providing a damages remedy against ICE officers for wrongful conduct—is evidence that Congress does not want to create such a remedy. *Tun-Cos*, 922 F.3d. at 527 (listing six amendments of the INA); *see also Abbasi,* 137 S. Ct. at 1865 (concluding that "legislative action suggesting that Congress does not want a damages remedy is in itself a factor counseling hesitation."). The Fifth Circuit has come to a similar conclusion, stating that:

> Despite its repeated and careful attention to immigration matters, Congress has declined to authorize damage remedies against individual agents involved in civil immigration enforcement. The institutional silence speaks volumes and counsels strongly against judicial usurpation of the legislative function.

*De la Paz v. Coy*, 786 F.3d 367, 377 (5th Cir. 2015).

Congress has considered the issue here—a person claiming to be a U.S. citizen put into removal proceedings. Moreover, Congress has provided a remedy in, among other places, 8 U.S.C. § 1252(b)(5)(A), which allows for such persons to bring those claims in the court of appeals. *Turner*, 2013 WL 5877358, at *8. "Congress did not, however, take the further step of providing those citizens with the opportunity to seek damages against the officers who instituted those proceedings." *Id.* Given Congress's action, a court should not create "a remedy separate from and in addition to what Congress created," "'[w]hether or not [the court] believe[s] that [Congress's] response was the best response.'" *Id.* (quoting *Schwiker v. Chilicky*, 487 U.S. 412, 429 (1988)).

The remedies under the INA do not include a money remedy, as Plaintiff may point out as

an argument for creating a *Bivens* remedy here.  But as the Fourth Circuit observed of that argument, "this misses the point, for the relevant question 'is not what remedy the court should provide for a wrong that would otherwise go unredressed' but instead 'whether an elaborate remedial system ... should be augmented by the creation of a new judicial remedy.'"  *Tun-Cos*, 922 F.3d. at 527 (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983)).

Another special factor counseling hesitation is that courts are not well suited to consider the costs and benefits of allowing a *Bivens* remedy in this context.  *See Hernandez v. United States*, No. 16-cv-6139-LTS, 2018 WL 1322187, at *9 (S.D.N.Y. Mar. 13, 2018) (not recognizing *Bivens* remedy in case where U.S. citizen alleged that ICE wrongfully issued a detainer that resulted in four days of custody); *see also Wilkie,* 551 U.S. at 562 ("'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf.") (*quoting Bush,* 462 U.S. at 389).  The plaintiff in *Hernandez*, like in this case, claimed to be a U.S. citizen, and alleged that his Fourth and Fifth Amendment rights had been violated by ICE officers who caused his detention.  The *Hernandez* court found that the judiciary was poorly positioned to weigh the costs and benefits because it

> is not positioned to provide 'guidance ... as to how [a DHS] officer should' handle the issuance of an immigration detainer or ascertain whether an individual is in fact a United States citizen and, were the Court to attempt to do so, there is a not-insignificant 'risk of disruptive intrusion by the Judiciary into the functioning of other branches,' specifically the Executive Branch and the Department of Homeland Security.

*Id*. (quoting *Abbasi*, 137 S. Ct. at 1860).

Another special factor courts have found against creating a *Bivens* remedy when a U.S. citizen is detained by ICE officers is that such a remedy "may have the effect of dissuading individuals from becoming immigration officers lest they be subject to the prospect of personal liability."

*Turner*, 2013 WL 5877358, at *10 (citing *Chilicky*, 487 U.S. at 425 for the proposition that "[t]he prospect of personal liability for official acts, moreover, would undoubtedly lead to new difficulties and expense in recruiting administrators for the programs Congress has established.").

In conclusion, many special factors counsel hesitation in this area such that the Court should not create a new *Bivens* remedy in this situation. The Court should therefore grant summary judgment to DO Danaher.

## II. Even if the Court were to imply a *Bivens* remedy, DO Danaher is entitled to qualified immunity.

Here, the undisputed material facts are that at the time DO Danaher detained Plaintiff, DO Danaher had two documents from the Gunnison County Sheriff and one FBI document saying that Plaintiff was born in Mexico and a citizen of Mexico. DO Danaher also knew that Plaintiff did not appear in the CIS, as he would have if he was born in Mexico and had a legal status in the United States. Those undisputed material facts show that DO Danaher is entitled to qualified immunity. Plaintiff claims that he told DO Danaher that he was born in the United States. That is disputed, but it is not material, because even if true, DO Danaher would still be entitled to qualified immunity because that, at most, would be conflicting information that did not compel DO Danaher to abstain from detaining Plaintiff.

### a. Plaintiff bears the burden to overcome the defense of qualified immunity.

To overcome the "presumption of immunity" afforded to public officials, Plaintiff must present facts sufficient to establish that DO Danaher: (1) violated his constitutional rights, and (2) that those rights were clearly established at the time. *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013); *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014).

Under the second prong of the qualified-immunity test, officials are immune unless "the law clearly proscribed the actions" they took. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity allows "ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Saucier v. Katz*, 533 U.S. 194, 202, 205 (2001) (noting that "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct").

As the Supreme Court explained, for a right to be clearly established, it must be "sufficiently clear that *every reasonable officer* would have understood that what he is doing violates that right" and "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Al-Kidd*, 131 S. Ct. at 2083 (quotations omitted; emphasis added). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2013).

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015). The Supreme Court has repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 572 U.S. at 779 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately

from the conclusion that [the rule] was firmly established." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The Supreme Court has stressed that the "specificity" of the rule is "especially important in the Fourth Amendment context." *Mullenix*, 136 S. Ct. at 308. Probable cause "turn[s] on the assessment of probabilities in particular factual contexts" and cannot be "reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

### b. Plaintiff has no evidence that DO Danaher violated his constitutional rights.

There is no evidence that DO Danaher violated Plaintiff's constitutional rights. 8 C.F.R. § 287.8(c)(2)(i) allows an immigration officer like DO Danaher to arrest a person if he "has reason to believe that the person to be arrested … is an alien illegally in the United States." The phrase "reason to believe" in construing an immigration officer's arrest authority equates to probable cause. *See, e.g., United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010) (citing cases); *Belleri v. United States*, No. 10-81527-CIV, 2012 WL 12892399, at *6 (S.D. Fla. Jan. 17, 2012), *vacated on other grounds*, 712 F.3d 543 (11th Cir. 2013) (holding, in case about detention of alleged U.S. citizen, "Defendant Rivera's only obligation was to determine whether she had probable cause to believe that Plaintiff was an alien subject to detention.") (citing 8 C.F.R. § 287.8(c)(2)).

Probable cause exists when the "facts and circumstances within the officer's knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (citation omitted). Courts ask whether a

"reasonable officer would have believed that probable cause existed … based on the information possessed by the arresting officer." *Id*. at 896-97. This standard is objective. *Id*. at 896.

DO Danaher had probable cause to conclude that Plaintiff was an alien in the United States illegally based on the undisputed facts. He had the two documents from the Gunnison County Sheriff stating that Plaintiff was born in Mexico. He also had the NCIC data stating that Plaintiff was born in Mexico and a citizen of Mexico. He also did not find Plaintiff in the CIS, where he would have expected to find Plaintiff if Plaintiff was born in Mexico and had a legal status in the United States. There is a dispute over whether Plaintiff spoke with DO Danaher at the Gunnison County jail or told DO Danaher that he was born in the United States. But even if that were true, a reasonable officer in DO Danaher's situation would have concluded that Plaintiff was in the United States illegally and, thus, had probable cause. DO Danaher did not act with certainty, but only probability is required for probable cause. *See Brinegar v. United States*, 338 U.S. 160, 175 (1949) ("In dealing with probable cause, … as the very name implies, we deal with probabilities.").

Plaintiff also lacks evidence that DO Danaher violated Plaintiff's Fifth Amendment due-process rights. Plaintiff's due-process claim is a procedural one, not a substantive one, because when a specific amendment, "provides an explicit textual source of constitutional protection … the Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (stating that substantive due process is inappropriate if a claim is "covered by" the Fourth Amendment). Here, the procedural-due-process clause provides the "explicit textual source" of his constitutional protection, so there is only a procedural due-process claim, not a substantive one.

When deciding a procedural-due-process claim, the Tenth Circuit engages in a "two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Ward v. Anderson*, 494 F.3d 929, 934 (10th Cir. 2007). Here, Plaintiff's due-process claim appears to come down to an argument that he is a U.S. citizen, he claimed to be a U.S. citizen, and DO Danaher's failure to conclude that he was a U.S. citizen at the time of his arrest must have been a failure of due process. But a faulty conclusion is not evidence of a constitutionally infirm process. So, for example, in *Baker v. McCollan*, 443 U.S. 137, 143-46 (1979), the police detained the wrong person despite the plaintiff's protestations that the police had the wrong person. The Supreme Court found that the plaintiff's

> innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment …, is largely irrelevant to his claim of deprivation of liberty without due process of law. The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.

Id. at 145. As in *Baker*, Plaintiff's (disputed) claim that he told DO Danaher that he was a U.S. citizen does not make DO Danaher liable for detaining him. As the Tenth Circuit held in another case alleging an improper arrest, "[o]nce Defendants concluded that the initially discovered facts established probable cause, they were under no obligation to forego arresting Plaintiff or release him merely because he said he was innocent." *Romero v. Fay*, 45 F.3d 1472, 1480 (10th Cir. 1995). Here, DO Danaher had probable cause as established by the documents from the Gunnison Sheriff and the FBI and the lack of information in the CIS. Plaintiff's (disputed) protestations of being a U.S. citizen did not undermine the initial probable cause.

Plaintiff's Fifth Amendment equal-protection claim also fails for lack of evidence. "[T]o assert a viable equal protection claim [Plaintiff] must make a threshold showing that [he was] treated differently from others who were similarly situated to [him]." *Carney v. Oklahoma Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017) (citation omitted). To be "similarly situated," the comparator group must be "similarly situated in relevant respects." *Selsor v. Workman*, 644 F.3d 984, 1016 (10th Cir. 2011). Plaintiff has no evidence of any person similarly situated to him who was treated differently by DO Danaher.

### c. Plaintiff has no evidence that DO Danaher violated a clearly established constitutional right.

Even if Plaintiff could show a genuine dispute of material fact as to whether DO Danaher violated his constitutional rights, he cannot show that such a right was clearly established. As discussed above, to be clearly established, Plaintiff must rely on an on-point case holding that the right was clearly established in Plaintiff's specific context, here that the detaining ICE officer had information from two law-enforcement agencies that Plaintiff born in Mexico or a citizen of Mexico and a lack of evidence from CIS that Plaintiff had a legal status in the United States. Plaintiff cannot show a clearly established constitutional right to be immune from detention in that context.

With respect to qualified immunity to a Fourth Amendment claim, a defendant need only show *arguable* probable cause. *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1281 (M.D. Ga. 2012). In *Lyttle*, where a U.S. citizen was detained and deported, two ICE agents detained Lyttle upon his return to the United States after his original deportation.[2] Lyttle provided the ICE agents with his U.S. passport, his airline ticket, and his adoption papers to prove his U.S. citizenship. *Id.*

---

[2] There were a variety of other defendants in *Lyttle*, and the court dealt with them according to their individual circumstances.

at 1292. However, the agents conducted a routine database search that showed that Lyttle was a previously deported criminal alien. *Id.* Based on this information, the agents issued an expedited removal order against Lyttle. *Id.* Lyttle argued that these officers violated his constitutional rights. *Id.* The *Lyttle* court disagreed and held that a "reasonable officer under these circumstances would [not] have been on notice that their detention of Lyttle was a clear violation of Lyttle's constitutional rights." *Id.* at 1293. The court explained that the two agents were faced with a "difficult predicament" because they had conflicting evidence as to whether Lyttle was actually a U.S. citizen. *Id.* at 1292. The court concluded that the two ICE agents were entitled to qualified immunity and dismissed the claims against them. *Id.* at 1293. Here, DO Danaher had evidence from two government sources, the Gunnison County Sheriff and the FBI, that Plaintiff was born in Mexico and a citizen of Mexico, and the lack of information in the CIS that he had a legal status in the United States. At most for Plaintiff there was a (disputed) statement that he was a U.S. citizen. As the *Lyttle* court pointed out, that is, at most, conflicting information as to Plaintiff's U.S. citizenship. As in *Lyttle*, DO Danaher is entitled to qualified immunity here.

Furthermore, even if Plaintiff is a U.S. citizen, he puts forward no evidence that DO Danaher could have determined that when he detained Plaintiff. "The qualified immunity analysis is limited to 'the facts that were knowable to the defendant officers' at the time they engaged in the conduct in question." *Hernandez v. Mesa*, 137 U.S. 2003, 2007 (2017) (citation omitted).

Other courts have also found qualified immunity in cases involving arrests of U.S. citizens by immigration officers. For example, in *Keil*, a U.S. citizen was arrested pursuant to an administrative immigration warrant on suspicion of being an illegal alien. *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011). At the time of the arrest, Keil stated that he was a U.S. citizen and presented

his U.S. passport to the arresting agents. *Id.* Keil argued that his passport established, as a matter of law, that he was a U.S. citizen and demonstrated that the ICE agents lacked probable cause for his arrest. *Id.* at 986. The Eighth Circuit disagreed and held that the agents had "at least" arguable probable cause to arrest Keil because of conflicting information: among other things, a review of CIS records showed that Keil was not a U.S. citizen. *Id.; see also Mendoza v. Osterberg*, No. 8:13CV65, 2016 WL 6238605, at *1-3 (D. Neb. Mar. 3, 2016) (finding arguable probable cause and qualified immunity when ICE officer issued detainer to hold U.S. citizen in jail based on immigration record with information similar to U.S. citizen).

Plaintiff's Fifth Amendment due-process and equal-protection claims also fail because Plaintiff can point to no on-point case that clearly establish that DO Danaher violated Plaintiff's constitutional rights. As discussed above, there is no constitutional requirement that an officer accept an arrestee's explanations as to why he or she should not be arrested.

**Conclusion**

The Court should grant summary judgment on all of Plaintiff's claims, dismiss the case, and award DO Danaher his costs.

Dated June 17, 2019                     Respectfully Submitted,

JASON R. DUNN
United States Attorney

*s/ Timothy B. Jafek*
TIMOTHY B. JAFEK
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
timothy.jafek@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on June 17, 2019, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following e-mail addresses:

andyr@friscolawyers.com

and I hereby certify that I will mail to the following non CM/ECF participants in the manner (mail, hand delivery, etc.) indicated by the nonparticipant's name:

*s/ Timothy B. Jafek*
TIMOTHY B. JAFEK