IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00268-PAB-GPG

Bernardo Medina,

**Plaintiff,**

v.

Christopher Danaher, in his individual capacity;
Robert Schiflett, in his individual capacity;
John/Jane Does 1-7 or more, all in their individual capacities,

**Defendants.**

---

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

---

The Plaintiff, by and through its attorneys, Richmond Sprouse, LLC, submits this Response to Defendant Danaher's Motion for Summary Judgment as follows.

Plaintiff, an American citizen born in Montrose, Colorado, was accosted by Immigration and Customs Enforcement (ICE) agents, including Defendant Danaher, in January of 2015. Plaintiff was locked up in immigration detention because "he didn't look like he was born in Montrose." Plaintiff suffered three days' of immigration imprisonment, continuously protesting his citizenship, before he was finally released without explanation or apology.

Given the Court's previous rulings, Defendant Danaher's motion for summary judgment is attempting to ensure that not one single person within ICE, or the broader immigration system, can be held responsible for unlawfully imprisoning an American citizen for three days.

Summary judgment is inappropriate because there are genuine disputes of material fact and Defendant Danaher cannot show he is entitled to judgment as a matter of law.

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Defendant Danaher's ¶ 1 is admitted.

2. Defendant Danaher's ¶ 2 is admitted.

3. Plaintiff is without sufficient knowledge to challenge Defendant Danaher ¶ 3, but for the purposes of this Response it is admitted.

4. Plaintiff is without sufficient knowledge to challenge Defendant Danaher ¶ 4, but for the purposes of this Response it is admitted.

5. Defendant Danaher's ¶ 5 is admitted.

6. Defendant Danaher's ¶ 6 presents an opinion or state of mind of Defendant Danaher, as such Plaintiff is denies this as an undisputed material fact.

7. Defendant Danaher's ¶ 7 presents an unsupported opinion of Defendant Danaher, as such Plaintiff is denies this as an undisputed material fact.

8. Defendant Danaher's ¶ 8 presents an unsupported opinion of Defendant Danaher, as such Plaintiff is denies this as an undisputed material fact.

9. Defendant Danaher's ¶ 9 presents an unsupported statement of Defendant Danaher, Plaintiff is unable to verify the declared courses of action, as such it is denied as undisputed.

10. Defendant Danaher's ¶ 10 is denied. Defendant Danaher has only presented a partial reproduction of his Exhibit 5. The (National Crime Information Center) NCIC data reviewed by Defendant Danaher on or about November 3, 2014 contained a page that also lists Plaintiff's

place of birth and citizenship as "unknown." Exhibit D (November 2014 NCIC data at CD0002).

11. Defendant Danaher's ¶ 11 presents an unsupported statement of Defendant Danaher, Plaintiff is unable to verify the declared courses of action, as such it is denied as undisputed.

12. Defendant Danaher's ¶ 12 presents an unsupported opinion of Defendant Danaher, as such Plaintiff is denies this as an undisputed material fact.

13. Defendant Danaher's ¶ 13 is admitted.

14. Defendant Danaher's ¶ 14 is denied as misleading. It is an oversimplification to refer to the Central Index System (CIS) as a record that includes "lawful permanent residents and others with a legal status in the United States." The CIS only contains data relating to individuals passing through the immigration process or subject to the provisions of the Immigration and Nationality Act. The CIS would have no records of a natural born U.S. Citizen. *See* https://www.dhs.gov/publication/dhsuscispia-009-central-index-system (description of CIS).

15. Defendant Danaher's ¶ 15 is denied. This is not a fact but a hypothetical statement based on the false premises that Plaintiff was born in Mexico.

16. Defendant Danaher's ¶ 16 is admitted.

17. Defendant Danaher's ¶ 17 presents an unsupported opinion of Defendant Danaher, as such Plaintiff is denies this as an undisputed material fact.

18. Defendant Danaher's ¶ 18 presents an unsupported opinion of Defendant Danaher, as such Plaintiff is denies this as an undisputed material fact.

19. Defendant Danaher's ¶ 19 presents an unsupported statement of Defendant Danaher, Plaintiff is unable to verify the declared courses of action, as such it is denied as undisputed.

20. Defendant Danaher's ¶ 20 is admitted.

21. Defendant Danaher's ¶ 21 is admitted.

22. Defendant Danaher's ¶ 22 is admitted.

23. Defendant Danaher's ¶ 23 is admitted.

24. Defendant Danaher's ¶ 24 is denied. Presenting this statement as an undisputed fact misinterprets that undisputed facts of the Scheduling Order. ECF No. 60 at 4. Defendant Danaher did not have a valid arrest warrant. He possessed only a valid warrant for alien arrest. This is not equivalent to a valid arrest warrant. Defendant Danaher has admitted he did not have a judicially-approved arrest warrant. Exhibit A (Danaher Deposition Excerpts) at 35:9-15.

25. Defendant Danaher's ¶ 25 is admitted.

26. Defendant Danaher's ¶ 26 is admitted.

27. Defendant Danaher's ¶ 27 presents an unsupported statement of Defendant Danaher, Plaintiff is unable to verify the declared courses of action, as such it is denied as undisputed.

28. Defendant Danaher's ¶ 28 is admitted.

29. Defendant Danaher's ¶ 29 is admitted.

30. Defendant Danaher's ¶ 30 presents an unsupported statement of Defendant Danaher, Plaintiff is unable to verify the declared courses of action, as such it is denied as undisputed.

31. Defendant Danaher's ¶ 31 is admitted.

32. Defendant Danaher's ¶ 32 is admitted.

## STATEMENT OF ADDITIONAL DISPUTED FACTS

33. Because Plaintiff was born in Montrose, Colorado, he is a U.S. Citizen. Exhibit C (Medina Deposition Excerpts) at 3:23-24.

34. Plaintiff had previously informed the officers of the Gunnison County Sherriff's Department that he was born in Montrose, Colorado. Exhibit C at 18:23-19:1.

35. Plaintiff did not inform the officers of the Gunnison County Sherriff's Department that he was born in Mexico. Exhibit C at 19:2-6.

36. Plaintiff's citizenship status mean there is no reason his name would appear on the CIS. *See* https://www.dhs.gov/publication/dhsuscispia-009-central-index-system (description of CIS).

37. Plaintiff informed Defendant Danaher that he was an American citizen. *See e.g.* Exhibit C at 27:8-14, 28:13-18.

38. ICE policy at the time Plaintiff was detained required Defendant Danaher to do more than rely on local law enforcement and consult the NCIC and the CIS. Exhibit B (Morton Memo).

39. Once Plaintiff had claimed citizenship, Defendant Danaher was required to consult the Office of Chief Counsel, conduct recorded interviews, make notes in Plaintiff's A-file, seek out birth certificates, consult vital records, and interview family members. Exhibit B.

40. Defendant Danaher was aware of the Morton Memo at the time Plaintiff was detained. Exhibit A (Danaher Deposition Excerpts) at 78:2-8.

41. Once Plaintiff had claimed citizenship, Defendant Danaher did not take any of the actions he was required to by the Morton Memo. Exhibit A at 74:17-77:5.

## SUMMARY JUDGMENT IS A DRASTIC REMEDY

42. To be granted summary judgment, Defendant Danaher has the burden to show that there is a complete absence of genuine issue as to any material fact and, for the purposes of deciding summary judgment, all facts and inferences must be viewed in the light most favorable to Plaintiff. *Baum v. Gillman*, 648 F.2d 1292, 1296 (10th Cir. 1981).

43. It is important to note that summary judgment should be viewed with suspicion by the Court. "Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them." *Coleman v. Mountain Mesa Uranium Corp.*, 240 F.2d 12, 14 (10th Cir. 1956) citing *Associated Press v. United States*, 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013.

44. And "any relief contemplated by Rule 56, F.R.Civ.P., is drastic and should be applied with caution to the end that litigants will have a trial on bona fide factual disputes." *Jones v. Nelson*, 484 F.2d 1165, 1168 (10th Cir. 1973).

45. Defendant Danaher's motion for summary judgment has only highlighted that there are indeed genuine issues of material fact, most notably Plaintiffs contention that he expressly told Defendant Danaher that he is a citizen of the United States. For that reason alone, summary judgment is inappropriate.

46. Defendant Danaher's motion also fails to prove that he is entitled to judgement as a matter of law, also making summary judgment inappropriate.

## THERE ARE GENUINE ISSUES OF MATERIAL FACT

47. Defendant Danaher attempts to present 32 facts that he claims are undisputed. Motion for Summary Judgment at ¶¶ 1-32. Many of these facts are stated in a way that glosses over significant disputes of these facts and their meaning. Some of these "undisputed" facts are not facts at all but Defendant Danaher's opinion masquerading as fact.

48. ¶¶ 5-12 of the Motion for Summary Judgment attempt to present local law enforcement information and NCIC information as fact. These paragraphs also attempt to present Defendant Danaher's opinion regarding the reliability of these sources as fact.

49. More importantly, ¶¶ 5-12 do not mention and attempt to obscure the fact that local law enforcement and the NCIC are not the only sources of information that Defendant Danaher should have relied on when presented with claims that he was detaining an American citizen.

50. By Defendant Danaher's own admission, at the time of Plaintiff's detention, he was aware that, when presented with claims of citizenship, he was required to consult the Office of Chief Counsel, conduct recorded interviews, make notes in Plaintiff's A-file, seek out birth certificates, consult vital records, and interview family members. Exhibit A (Danaher Deposition Excerpts) at 72:15-20 and 77:6-78:19; Exhibit B (Morton Memo). Defendant Danaher did none of these things. Exhibit A at 74:17-77:5.

51. What this obfuscation shows is that even though Defendant Danaher attempts to classify the fact that Plaintiff relayed a claim of citizenship to Defendant Danaher as "disputed but not material" that claim is indeed material. It is the crux of the case. Plaintiff made claims to citizenship to Defendant Danaher multiple times. *See e.g.* Exhibit C (Medina Deposition Excerpts) at 27:11-14, 28:13-18, 31:1-9; *see also* Exhibit A at 49:21-50-10 (showing it was Defendant Danaher who conducted Plaintiff's referenced interview). Because Plaintiff made these claims, Defendant Danaher was required to take other investigatory steps that he did not take, above and beyond simply relying on local law enforcement and checking the NCIC.

52. ¶¶ 13-17 of the Motion for Summary Judgment create the basis for Defendant Danaher's claim that he was justified in relying on the Central Index System. This despite the fact that the Central Index System (CIS), by Defendant Danaher's own admission, is a record of aliens in the United States. Plaintiff of course is not an alien in the United States and has never claimed to be, he is a naturally born U.S. citizen and that is the information Plaintiff relayed to Defendant

Danaher. Claiming that Plaintiff's lack of appearance in the CIS means he is an undocumented immigrant is tantamount to claiming that because Defendant Danaher doesn't show up on the FBI's most wanted list he must be responsible for all unsolved crimes. There is absolutely no reason the CIS should apply to the Plaintiff or to this case. Yet Defendant Danaher trots out this specious reasoning on six other occasions in his Motion for Summary Judgment.

53. Defendant Danaher's "undisputed facts" are anything but. Plaintiff's claim that he told Defendant Danaher he was a citizen, which must be accepted as true for this motion for summary judgment, would require Defendant Danaher to take more steps than relying on local law enforcement, the NCIC, and the CIS, even if those sources are credible in Defendant Danaher's opinion. Because Defendant Danaher didn't take the additional investigatory steps make Defendant Danaher liable to Plaintiff.

54. Defendant Danaher's "Undisputed Material Facts" are actually glossed-over genuine issues of material fact. *Jones*, 484 F.2d at 1168 ("No margin exists for the disposition of factual issues. If there is any issue as to a material fact dispositive of right or duty, the case is not ripe for summary judgment."). And there are significant conflicts in the depositions of Plaintiff and Defendant Danaher. *Coleman*, 240 F.2d at 15 ("Also the facts set out in the depositions are to say the least somewhat conflicting, at least enough so to make summary judgment inapplicable.") Summary judgment is inappropriate.

**PLAINTIFF HAS PLEADED A RECOGNIZED *BIVENS* CLAIM**

55. Defendant Danaher suggests that Plaintiff's claims differ in a meaningful way from previously decided cases that established what causes of action *Bivens* can remedy. Defendant Danaher bases this claim on a narrow reading of *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). This

argument is incorrect and, were the Court to accept Defendant Danaher's extremely narrow reading of "meaningful", *Bivens* would be essentially dead law unless the exact same people committed the exact same offenses as described in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), *Davis v. Passman*, 442 U. S. 228 (1979), or *Carlson v. Green*, 446 U. S. 14 (1980).

56. The 10th Circuit has decided few cases interpreting *Abbasi*. Plaintiff assumes this is the reason that Defendant Danaher cites nothing from the 10th Circuit in his argument that Plaintiff's case presents a new context for a *Bivens* case. Defendant Danaher instead relies on decisions from the 4th and 5th Circuits that mirror his own extremely narrow reading. However, to focus on these cases ignores the fact that the 10th Circuit has addressed "new context" *Bivens* arguments.

57. The only case in which the 10th Circuit Court of Appeals has addressed the "new context" argument, and thus the only mandatory authority on the issue, is from *Hale v. Fed. Bureau of Prisons*, 759 Fed. Appx. 741 (10th Cir. 2019). Though not determinative, that Court suggested that *Bivens* expansion occurred in the asserting a First Amendment claim, an entirely new theory of recovery from anything recognized before. *Id*. at 744. No 10th Circuit decision has been issued that reads the word "meaningfully" as narrow as Defendant Danaher suggests.

58. Plaintiff's claims are based on the same causes of action already held to be appropriate for a *Bivens* action. Plaintiff has made a claim under the Fourth Amendment for violation of his right to be secure in his person and affects from unreasonable searches and seizure, a cause of action created by *Bivens,* 403 U.S. 388 (1971). And Plaintiff has made a claim under the Fifth Amendment for violation of his right to due process and equal protection, a cause of action specifically approved by *Davis*, 442 U. S. 228 (1979).

59. Plaintiff acknowledges that the facts of each claim do not exactly replicate *Bivens* or *Davis*. But they also do not differ meaningfully, as that word is commonly defined. The Cambridge Dictionary defines "meaningfully" as "in a way that has meaning and makes sense." "Meaningful" does not require that every single detail be the same.

**IF THE COURT DECIDES THIS CASE DOES PRESENT A "NEW CONTEXT" THEN EXTENSION OF BIVENS IN PROPER**

60. If this Court disagrees with the above-analysis and decides that this case does present a "new context" for a *Bivens* action, then it would be appropriate to extend *Bivens* to this case.

61. To extend *Bivens*, this Court must find that 1) Plaintiff has no other adequate alternative remedy; and 2) there are no special factors counseling hesitation. *Abbasi*, 137 S. Ct. at 1857-58.

62. The 10th Circuit has not decided a case in which it accepted or rejected extended *Bivens* to a new context but other circuits have. And while Plaintiff recognizes that *Abbasi* mandates caution and disfavors extending *Bivens*, it does not in any way prohibit extension. "After all, if *Bivens* could not be expanded so that it applied in a new context, there would be no need for 'caution' or treating expansion as a 'disfavored judicial activity,' or considering whether there was an adequate alternative remedy or special factors. Determining that the context was new would be the end of the inquiry, not the beginning." *Rodriguez v. Swartz*, 899 F.3d 719, 738 (9th Cir. 2018).

    I.    <u>Plaintiff Does Not Have An Adequate Alternative Remedy</u>

63. Defendant Danaher's sole argument regarding an alternative remedy is that the Immigration and Naturalization Act (INA) does provide an adequate alternative remedy. This is incorrect. The "remedies" Defendant Danaher suggests under the INA do not provide the same remedies

that Plaintiff is seeking with this suit. And the INA "remedies" suggested also do not bar *Bivens* actions.

64. The Motion for Summary Judgment suggests that 8 C.F.R. § 287.10 allows for making an internal complaint, or that 8 C.F.R. § 1003.38 allows for an adversarial bond hearing, or that 8 C.F.R. § 1229a(b) allows for an adversarial removal hearing, or that 8 C.F.R. § 1252 allows for judicial review of removal orders. None of these are remotely similar to the remedies Plaintiff is seeking in this case. Plaintiff does not need an adversarial bond or removal hearing or a review of a removal order.

65. Not to belabor the point but Plaintiff is an American Citizen. These "alternative remedies" are nothing more than non-sequiturs. The remedies Defendant Danaher suggests are not what Plaintiff wants or needs. Plaintiff wants Defendant Danaher held accountable for causing Plaintiff to be unlawfully imprisoned for three days and Plaintiff wants to be compensated for his lost freedom. Defendant Danaher has not suggested, and Plaintiff is not aware of, any alternative remedies to this effect that are remotely adequate. *Rodriguez v. Swartz*, 899 F.3d 719, 739 (9th Cir. 2018). ("But even though an alternative remedy need not be 'perfectly congruent' with *Bivens* or 'perfectly comprehensive,' it still must be 'adequate.'").

66. To paraphrase Justice Harlan's concurring opinion in the *Bivens* case "For people in [Plaintiff's] shoes, it is damages or nothing." *Bivens*, 403 U.S. at 410.

67. Additionally, the INA remedies Defendant Danaher suggests have been interpreted as being inapplicable remedies to broad swaths of official misdeeds. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999) generally held that the INA does not apply to any and all claims arising out of immigration proceedings and that 8 C.F.R. § 1252, suggested

by Defendant Danaher, "is much narrower. The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.' (Emphasis in original.) There are of course many other decisions or actions that may be part of the deportation process -- such as the decisions to open an investigation…." This that specific INA "remedy" does not apply for Plaintiff.

II. No "Special Factors" Are Present In This Case

68. Defendant Danaher wrongly suggests there are "special factors" in this case that should dissuade this Court from extending *Bivens*. Defendant Danaher's "special factors" come down to three arguments 1) Congress has authority over immigration matters and, through the INA, has not saw fit to provide a damages remedy for this situation (strikingly, Defendant Danaher's argument here is in direct contrast to his previous claim that the INA does provide an alternative remedy); 2) this Court is unable to properly weigh the costs and benefits of extending *Bivens*; and 3) If ICE agents are held accountable for wrongly imprisoning citizens, then fewer people will want to be ICE agents. These ostensible "special factors" all fail to rise to the level required by *Abassi*.

69. The first purported "special factor" raised by Defendant Danaher is basically that Congress has the power over immigration policy. However, this claim misreads *Abassi's* requirements. *Abassi* held that a *Bivens* claim cannot be used to alter government policy and that policy challenge is recognized if an action attempts to challenge policy or hold high-level officials liable. *Abassi*, 137 S. Ct. at 1853, 1860-61. Plaintiff's claims make no such attempt at policy or ranking officials. Rather, Plaintiff's claims take aim at individual, rank-and-file officers guilty of overreach. This is exactly the types of cases *Abassi* distinguished as clearly not containing

12

special factors. "Unlike the plaintiffs in those cases, respondents do not challenge individual instances of discrimination or law enforcement overreach, which due to their very nature are difficult to address except by way of damages actions after the fact. Respondents instead challenge large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners." *Id*. at 1862. "Furthermore, a Bivens claim is brought against the individual official for his or her own acts…." *Id*. at 1860.

70. The second purported "special factor" is that this Court is not suited to considering the costs and benefits of extending *Bivens*. Defendant Danaher simply relies on language in *Abassi* cautioning against "the risk of disruptive intrusion by the Judiciary…" as if that totally precludes this Court from becoming involved. *Id*. But this ignores that, while cautious, *Abassi* specifically provides that this Court can indeed extend *Bivens*. *Id*. at 1857-58. As stated *supra*, there would be no need for caution if there was simply a blanket ban on extending *Bivens*.

71. Other courts have held that they are "well suited…to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1858. In *Lanuza v. Love*, 899 F.3d 1019, 1028-30 (9th Cir. 2018), held that no special factors were present because, as in this case, the Plaintiff did not challenge high-level executive action, Plaintiff was proceeding against a low-level federal officer for his own actions, the case related to routine immigration proceedings and expanding *Bivens* wouldn't threaten the political branches' supervision of national security and foreign policy, the case did not garner any executive or congressional attention, and there was "congressional silence" on the subject. In that case, the Court held that "Judges are particularly well-equipped to weigh the costs of constitutional violations that threaten the credibility of our judicial system." *Id*. at 1032.

72. In another case similar to the Plaintiff's action in front of this Court, a court held that special factors did not exist because "we look for special factors in terms of the specific facts alleged in the complaint…. In so doing, it is essential to keep in mind that [Plaintiff] does not seek damages from the United States. Neither does she seek an injunction or declaratory judgment that might affect future government actions. Instead, she brings only a claim for money damages against [Defendant] as an individual." *Rodriguez v. Swartz*, 899 F.3d 719, 744 (9th Cir. 2018).

73. Plaintiff's case at issue is more analogous in relation to "special factors" to *Lanuza* and *Rodriguez* that the cases proposed by Defendant Danaher.

74. Defendant Danaher's final "special factor" claim that people won't want to be ICE agents unless they can detain American citizens with impunity is not only a repugnant statement that implies ICE can't comfortably do their jobs without operating in an environment devoid of any constitutional protections, it is also a mistaken policy argument. Defendant's Danaher's mistaken policy arguments were already addressed *supra*. And other courts have been highly suspicious of arguments similar to Defendant Danaher's last claim that ICE officers must be allowed to operate outside the law. *See e.g. Lanuza*, 899 F.3d at 1029 ("[Defendant] argues that all actions taken by immigration officials in the course of their duties—even criminal acts—are necessarily intertwined with the execution of immigration policy. We decline to entertain such a broad reading of immigration law, as the illogical nature of such a reading is demonstrated by the absurdity of its results.").

**DEFENDANT DANAHER IS NOT ENTITLED TO QUALIFIED IMMUNITY**

75. Defendant Danaher attempts to claim qualified immunity because he was in possession of three incorrect documents and because Plaintiff, again an American citizen, did not show up in a

data base of resident aliens. This ignores the fact that, taking Plaintiff's claim that he informed Defendant Danaher of his citizenship as true, Defendant Danaher failed to follow through on the required additional investigations. Defendant Danaher's claim to immunity also rests on the proposition that it is not illegal for ICE to lock up an American citizen.

76. To make a claim for qualified immunity Defendant Danaher must show that his conduct did not "violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Despain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (internal citations omitted). Once asserted, the Plaintiff can counter a claim of qualified immunity by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *Id*.

77. Plaintiff can accomplish this by showing that "there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains…." *Id*. at 979 (internal citations omitted). Although "A previous decision need not be materially factually similar or identical to the present case; instead, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

78. This inquiry must be undertaken "in the light most favorable to the [Plaintiff]…." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

## I. Plaintiff Had A Clearly Established Right to Be Free From Unlawful Searches and Seizures And Defendant Violated That Right

79. Defendant Danaher makes the tenuous claim that by detaining Plaintiff, he violated no constitutional rights. This reasoning relies on ignoring the Fourth Amendment.

80. The Supreme Court has a decision on point that states that an immigration official must have probable cause to detain an individual. *United States v. Brignoni-Ponce*, 422 U.S. 873, 882 (1975).

81. Probable cause exists "only when the 'facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Valenzuela*, 365 F.3d 892, 896, (10th Cir. 2004) (internal citations omitted). And Plaintiff agrees with Defendant Danaher that "the primary concern is 'whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer.'" *Id*. at 869-97.

82. And in this case, assuming facts in light most favorable to Plaintiff, Defendant Danaher was in possession of information that Plaintiff claimed to be an American citizen. Exhibit C (Medina Deposition Excerpts) at 27:11-14, 28:13-18, 31:1-9. Defendant Danaher was aware of an ICE policy requiring him to do more thorough investigation in the case of a citizenship claim. Exhibit A (Danaher Deposition Excerpts) at 72:15-20 and 77:6-78:19; Exhibit B (Morton Memo). And Defendant Danaher did not perform any further investigation. Exhibit A at 74:17-77:5.

83. Defendant Danaher's behavior did not rise to the level of "reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that

16

an offense has been or is being committed." *Valenzuela*, 365 F.3d at 896. Defendant Danaher thus did not have probable cause therefore violating a Supreme Court case on point. And a reasonable official would understand that what Defendant Danaher did violated Plaintiff's rights. *Thomas*, 765 F.3d at 1194.

## II. Plaintiff Had A Clearly Established Right To Due Process

84. Defendant Danaher's claim for qualified immunity against Plaintiff's Fifth Amendment due process claim fails for the same reason as his Fourth Amendment claim.

85. Plaintiff agrees that the *Ward v. Anderson*, 494 F.3d 929, 934 (10th Cir. 2007) test is the appropriate due- process analysis: (1) Did the Plaintiff possess a protected interest to which due process protection was applicable, and (2) Was the Plaintiff afforded an appropriate level of process.

86. Defendant Danaher, citing *Romero v. Fay*, 45 F.3d 1472, 1480 (10th Cir. 1995), claims that, as long as probable cause was met, no process was due beyond Defendant Danaher's initial scant investigation. As shown *supra*, probable cause was not met and Defendant Danaher was aware of additional information that required due process.

## III. Plaintiff Had A Clearly Established Right To Equal Protection

87. Defendant Danaher gives cursory attention to Plaintiff's Fifth Amendment equal protection claim. Defendant Danaher claims that "Plaintiff has no evidence of any person similarly situated to him who was treated differently by [Defendant] Danaher." This is demonstrably false.

88. The 10 Circuit has long-established that the equal protection clause of the Fifth Amendment essentially holds that "that all persons similarly situated should be treated alike." *See e.g. Citizen Ctr. v. Gessler*, 770 F.3d 900, 917 (10th Cir. 2014). And the Supreme Court has held that "These

provisions are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality…." *Plyler v. Doe*, 457 U.S. 202, 212 (1982).

89. In his deposition, when asked if he had ever detained any other U.S. Citizens Defendant Danaher answered that he had only ever detained one other U.S. citizen and that that individual didn't know he was a citizen and was released within 6 hours. Exhibit A at 91:18-92:19.

90. Thus Plaintiff was facially treated differently by Defendant Danaher than similarly situated citizens. Plaintiff has also alleged that, when he made his claims to Defendant Danaher regarding citizenship, Defendant Danaher's response was that Plaintiff "did not look like [he] was born in Montrose." That is a clear allusion to Plaintiff's Hispanic race.

91. There is a Supreme Court and 10th Circuit law clearly on point. *Despain*, 264 F.3d at 971. And a reasonable official would understand that what Defendant Danaher was in violation of the equal protection clause. *Thomas*, 765 F.3d at 1194.

92. Defendant Danaher is not entitled to qualified immunity against any of Plaintiff's claims.

## CONCLUSION

93. Defendant Danaher has failed to show that there is no issue of material fact or that he is entitled to judgment as a matter of law. He has this failed to meet the burdens for summary judgment under USCS Fed Rules Civ Proc R 56. Defendant Danaher has also failed to show that he is entitled to qualified immunity on any of Plaintiff's claims. Defendant Danaher did not provide any citations or even argument to support his request for costs so that claim must fail as a matter of course.

94. According to the precedents of the Supreme Court and this circuit, Plaintiff's case should be allowed to proceed to trial. Summary judgment would be inappropriate.

95. The Court should consider the ramifications of granting this motion for summary judgment. This Court has already granted dismissal to the supervisor that signed the ICE warrants. The Court has stated that Defendant Danaher's accomplices in this detention would not be held liable. And in a separate case, another court in the 10th Circuit decided that the private prison corporation that held Plaintiff could not be held liable. If this Court grants Defendant Danaher's motion for summary judgment that will mean that an American citizen was detained by an ICE agent, on nothing more than cursory investigation, possible because he didn't look like he was born in Montrose, and there is no remedy. That is a dangerous precedent to set to essentially hold that immigration agents can detain an American citizen, claim mistake, and no one will be held responsible. It is chilling to think the effect that sort of decision will have on the future behaviors of ICE agents.

96. Finally, this court should consider the maxim "Equity will not suffer a wrong without a remedy. *McKinney v. Gannett Co.*, 817 F.2d 659, 670 (10th Cir. 1987).

Respectfully submitted on this the 22nd day of July, 2019.

*/s/ Andy R. Richmond*
_____
Andy R. Richmond, No. 45927
Richmond Sprouse, LLC
P.O. Box 280
Frisco, Colorado 80443
Phone Number: 970-668-0176
E-mail: andyr@friscolawyers.com
Attorney for Plaintiff Medina

## CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of July, 2019, I electronically filed the foregoing **RESPONSE TO MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system and served the same via the CM/ECF system to the following:

Timothy B. Jafek
1801 S. California St., Suite 1600
Denver, Colorado 80202
timothy.jafek@usdoj.gov


*/s/ Andy Richmond*
_____