IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-00268-PAB-GPG

BERNARDO MEDINA,

    Plaintiff,

v.

CHRISTOPHER DANAHER, in his individual capacity, and
JOHN/JANE DOES 1-4, all in their individual capacities,

    Defendants.

_____

# ORDER
_____

This matter is before the Court on defendant Christopher Danaher's Motion for Summary Judgment [Docket No. 87]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

Plaintiff Bernardo Medina ("Medina") is a United States citizen born in Montrose, Colorado. Docket No. 93 at 4, ¶ 33.[1] Defendant Christopher Danaher ("Danaher") was, at all times relevant, a deportation officer assigned to the Alamosa, Colorado office of Immigration and Customs Enforcement ("ICE"). Docket No. 87 at 2, ¶ 1.

---

[1] Medina claims this fact is "disputed." Docket No. 93 at 4, ¶ 33. However, as Danaher admits that this fact is true, *see* Docket No. 94 at 2, the Court considers the fact undisputed for the purposes of the motion. All facts are otherwise undisputed unless otherwise noted.

On September 26, 2014, the Gunnison County Sheriff's Department (the "Sheriff's Department") informed Danaher that it had arrested Medina for driving under the influence. *Id.*, ¶ 3. The Sheriff's Department faxed Danaher two documents that listed plaintiff's place of birth as Mexico. *Id.*, ¶¶ 4-5. On or about November 3, 2014, Danaher checked the FBI's National Crime Information Center ("NCIC") database for information about plaintiff. *Id.* at 3, ¶¶ 9-10.[2] The NCIC data contained two pages, one listing plaintiff's place of birth as Mexico and his citizenship as Mexican, the other listing plaintiff's place of birth and citizenship as "unknown." *Id.*, ¶ 10; Docket No. 93 at 2-3, ¶ 10; Docket No. 94 at 1, ¶ 10.

On January 27, 2015, Danaher and another ICE officer detained Medina as he exited the Gunnison County Courthouse following a hearing on his September 2014 arrest. Docket No. 87 at 4, ¶¶ 21-22. Medina presented Danaher with a Colorado identification card as proof of identity. *Id.*, ¶ 23. Medina was transported to the Alamosa ICE office, where he was interviewed by Danaher. *Id.*, ¶¶ 25-26. Medina

---

[2] Medina disputes ¶ 9 of Danaher's motion on the basis that the statement is "unsupported" and that he is "unable to verify the declared courses of action." Docket No. 93 at 2, ¶ 9. However, the statement is supported by a declaration from Danaher made on personal knowledge, which is adequate support pursuant to Fed. R. Civ. P. 56(c). *See* Docket No. 87-2. Medina's statement that he is "unable to verify the declared courses of action" does not "establish the . . . presence of a genuine dispute," as required by Fed. R. Civ. P. 56(c)(1)(B). Thus, the Court considers this fact undisputed for the purpose of this motion. *See* Fed. R. Civ. P. 56(e); Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3. The Court also notes that Medina deposed Danaher and therefore had the opportunity to discover what actions Danaher took. *See* Docket No. 93-1 (excerpts of Danaher's deposition).

informed Danaher that he was an American citizen. Docket No. 93 at 5, ¶ 37.[3] Danaher obtained NCIC data listing plaintiff's place of birth as Mexico and his citizenship as Mexican. Docket No. 87 at 5, ¶ 28. Medina was subsequently transferred to a jail in Colorado Springs, Colorado. *Id*., ¶ 31. On January 29, 2015, Medina was transferred to the GEO Detention Center in Denver, Colorado. *Id*. at 5, ¶ 32. He remained in ICE custody until January 30, 2015, when he was released. *Id*.

On January 27, 2017, Medina filed this lawsuit against Danaher, Robert Shiflett ("Shiflett"), and seven Doe defendants. Docket No. 1. Though styled as a single "cause of action," the operative complaint effectively brings three claims pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Docket No. 26 at 8. Medina alleges that defendants violated Medina's (1) Fourth Amendment right to be free from unreasonable searches and seizures, (2) Fifth Amendment right to due process, and (3) Fifth Amendment right to equal protection. *Id*. at 8-9, ¶¶ 45-48. On September 21, 2018, the Court dismissed all claims against Shiflett. Docket No. 51. On June 1, 2019, Magistrate Judge Gordon P. Gallagher recommended that the Court deny Medina's motion for default judgment against Danaher and the Doe defendants or, in the alternative, motion for leave to amend the complaint. Docket No. 86. The magistrate judge also recommended that Doe defendants #5-7 be dismissed. *Id*. On June 26, 2019, after receiving no objections to the recommendation, the Court adopted

---

[3] Medina claims this fact is "disputed." Docket No. 93 at 5, ¶ 37. However, as Danaher admits this fact, *see* Docket No. 94 at 2, the Court considers the fact undisputed for the purposes of the motion.

the recommendation. Docket No. 88. Thus, Danaher is the only named defendant remaining in the action.

On June 17, 2019, Danaher filed the instant motion for summary judgment. Docket No. 87.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment*. Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal

quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Danaher moves for summary judgment on Medina's *Bivens* claims. Danaher argues that (1) no *Bivens* remedy exists and (2) if a *Bivens* remedy does exist, Danaher is entitled to qualified immunity. Docket No. 87 at 1. Whether a *Bivens* remedy exists for Medina's claims is "antecedent" to the question of whether defendant is entitled to qualified immunity. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017); *see also Willkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007) (noting that "recognition of the entire cause of action" is "directly implicated by the defense of qualified immunity"). Thus, the Court first considers whether a *Bivens* remedy is available for any of Medina's claims.

### A. Legal Framework

In *Bivens*, the Supreme Court held that it would enforce an implied cause of action to compensate "persons injured by federal officers who violated the [Fourth Amendment] prohibition against unreasonable search[es] and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). The Supreme Court subsequently expanded the scope of *Bivens* remedies to include two other contexts. *See Davis v. Passman*, 442 U.S. 228 (1979) (finding a damages remedy for gender discrimination through the equal protection component of the Fifth Amendment Due Process Clause); *Carlson v. Green*, 446 U.S. 14 (1980) (finding a damages remedy for failure to provide adequate medical treatment through the Eighth Amendment's Cruel and Unusual Punishments Clause).

In recent years, however, the Supreme Court has made clear that "implied causes of action are disfavored," *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009), and that "expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar*, 137 S. Ct. at 1857 (internal quotation marks omitted). In *Ziglar,* the Supreme Court concluded that the central question to consider in recognizing a *Bivens* remedy is one of separation-of-powers: whether Congress or the courts should decide whether to provide for a damages remedy in a specific context. *Id*.[4] *Ziglar* established a "rigorous" two-part framework for courts to use before "implying a *Bivens* cause of action in a new context

---

[4] Only six justices participated in *Ziglar*. Justice Kennedy's opinion is a majority opinion, joined fully by Chief Justice Roberts and Justice Alito. Justice Thomas joined most of the majority opinion, save one section in which he concurred only in the judgment, and filed a concurring opinion. Although Justice Thomas would go further than the majority opinion by "limiting *Bivens* and its progeny to the precise circumstances that they involved," he nonetheless joined all portions of the majority opinion relevant to this case. *Ziglar*, 137 S. Ct. at 1870.

or against a new category of defendants." *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017).  First, the court considers whether the asserted cause of action presents a "new context" – whether it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."  *Ziglar*, 137 S. Ct. at 1859.  Second, if the cause of action presents a new context, the court considers whether there are "special factors counselling hesitation in the absence of affirmative action by Congress."  *Id*. at 1857 (citing *Carlson*, 446 U.S. at 18).

### B.   New Context

The Court first considers whether Medina's three *Bivens* claims present a new context.  Because "even a modest extension [of *Bivens*] is still an extension," *Ziglar*, 137 S. Ct. at 1864, "a radical difference is not required" in order for a case to present a new context.  *Tun-Cos v. Perotte*, 922 F.3d 514, 523 (4th Cir. 2019).  The *Ziglar* Court identified some "instructive" examples as to how a case might differ in a meaningful way from previous *Bivens* contexts:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1860.

7

Although there is no Tenth Circuit precedent on point, the Fourth Circuit's analysis of a similar fact pattern is instructive.[5] In *Tun-Cos*, plaintiffs attempted to bring *Bivens* claims against ICE officers for unreasonable search and seizure under the Fourth Amendment and equal protection claims under the Fifth Amendment. 922 F.3d at 519. The Fourth Circuit held that these claims presented a new *Bivens* context for three reasons. First, because the ICE officers were enforcing immigration law rather than criminal law, "the statutory or other legal mandate under which the officers were operating" was distinct from *Bivens*. *Id*. at 524 (internal alterations omitted). Second, the ICE officers were a new category of defendants not present in any previously recognized *Bivens* claims. *Id*. at 525; *see Ziglar*, 137 S. Ct. at 1857. Finally, plaintiffs' Fifth Amendment claims had "no analogue" in the Supreme Court's prior *Bivens* jurisprudence, as the only previously recognized Fifth Amendment claim was an equal protection claim where a Congressman had fired his female secretary. *Tun-Cos*, 922 F.3d at 525 (citing *Davis*, 442 U.S. at 230-31).

The Court agrees with the reasoning of *Tun-Cos*. As in *Tun-Cos*, Medina seeks to impose individual liability on an ICE officer for enforcing the federal immigration laws. Thus, both the context – "the statutory or other legal mandate under which the officer was operating" – and the category of defendants here are meaningfully different

---

[5] Medina suggests that *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741 (10th Cir. 2019) (unpublished), is "mandatory authority" on the issue of what presents a "new context" under *Ziglar*. Docket No. 93 at 9. Unpublished opinions are not mandatory authority in the Tenth Circuit. *See* 10th Cir. R. 32.1. Moreover, *Hale*'s only mention of *Ziglar* is a footnote discussing the lower court's disposition of the plaintiff's First Amendment damages claims. *See Hale*, 759 F. App'x at 744 n.4. Thus, *Hale* has no bearing on this case.

from the *Bivens* claims the Supreme Court has previously recognized. *See Ziglar*, 137 S. Ct. at 1860. Medina argues that these distinctions are not "meaningful," suggesting that the reading of *Ziglar* adopted by *Tun-Cos* should not be followed. Docket No. 93 at 8-10. However, Medina ignores *Ziglar*'s explicit statement that "the statutory or other legal mandate under which the officer was operating" is an instructive example of a "difference that [is] meaningful enough to make a given context a new one." *See Ziglar*, 137 S. Ct. at 1859.[6] Although *Bivens* remedies have been approved in the past in certain Fourth and Fifth Amendment contexts, these claims are not to be extended to "other classes of defendants facing liability" without undertaking a special factors analysis. *See Vanderklok*, 868 F.3d at 200; *see also Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("*Hernandez II*") (noting that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized"). Thus, Medina's argument that his claims are not meaningfully different within the meaning of *Bivens* is not persuasive.

**C. Special Factors**

The Court next considers whether recognizing a *Bivens* claim in these circumstances implicates any special factors. Special factors are those that "cause a court to hesitate" before concluding that "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of

---

[6] To the extent that Medina argues that reading *Ziglar* this way would have the effect of dramatically curtailing the availability of new *Bivens* actions, the Court notes *Ziglar*'s unambiguous statements that "expanding the *Bivens* remedy is now a disfavored judicial activity" and that "even a modest extension [of the *Bivens* remedy] is still an extension." *See Ziglar*, 137 S. Ct. at 1857, 1864.

allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1858. Relevant special factors include the "impact on governmental operations systemwide," "the burdens on [g]overnment employees who are sued personally," whether "the case arises in a context in which Congress has designed its regulatory authority in a guarded way," and whether "there is an alternative remedial structure" already available. *Id*. If any special factors are present, "a *Bivens* remedy will not be available." *Id*. at 1857. This second step "creates a very low bar" for a defendant to clear. *Boudette v. Sanders*, No. 18-cv-02420-CMA-MEH, 2019 WL 3935168, at *7 (D. Colo. Aug. 19, 2019).

The Court is satisfied that special factors are present in this case. Immigration enforcement is a complex area in which Congress has "designed its regulatory authority in a guarded way." *See Tun-Cos*, 922 F.3d at 526 (citing *Ziglar*, 137 S. Ct. at 1858). Circuit courts have concluded that special factors apply to potential *Bivens* actions in the immigration enforcement context. *See id.* at 525-528; *Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012) (concluding that "[t]he complexity and comprehensiveness of the existing remedial system" and the tendency of immigration issues to affect national security are special factors counseling hesitation); *Alvarez v. U.S. Immigration and Customs Enforcement*, 818 F.3d 1194, 1210 (11th Cir. 2016) (describing "the breadth and detail of the Immigration and Nationality Act" and "the importance of demonstrating due respect for the Constitution's separation of powers" as special factors). Thus, the Court is not persuaded that it is "well suited . . . to consider and weigh the costs and benefits of allowing a damages action to proceed." *See Ziglar*, 137 S. Ct. at 1858.

To argue that special factors are not present in this case, Medina points to two cases from the Ninth Circuit, *Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018), and *Rodriguez v. Swartz*, 899 F.3d 719 (9th Cir. 2018). Neither case can bear the weight Medina places on it. In *Lanuza*, the Ninth Circuit concluded that special factors did not preclude a *Bivens* remedy for "an individual attorney's violation of [plaintiff's] due process rights in a routine immigration proceeding" by submitting false evidence. 899 F.3d at 1027. The court held that "[j]udges are particularly well-equipped to weigh the costs of constitutional violations that threaten the credibility of our judicial system." *Id*. at 1032. *Lanuza* is thus distinguishable, as the conduct for which Medina seeks a remedy is not conduct that "compromised adjudicative proceedings." *See id*. at 1033. As for *Rodriguez*, the Ninth Circuit concluded that special factors were not present in a case where a Border Patrol agent shot and killed an individual across the U.S.-Mexico border without any justification. 899 F.3d at 744-48. In dissent, Judge Milan Smith concluded that the majority's disposition "authorize[d] an impermissible extension of *Bivens* to a new context despite the presence of numerous special factors counselling judicial hesitation." *Id*. at 752 (M. Smith, J., dissenting). The Supreme Court recently vacated the Ninth Circuit's judgment in *Rodriguez* following its decision in *Hernandez II*. *See Swartz v. Rodriguez*, __ S. Ct. __, 2020 WL 981778 (Mem) (March 2, 2020) (vacating judgment and remanding for further consideration in light of *Hernandez II*); *see also Hernandez II*, 140 S. Ct. at 740-50 (declining to extend a *Bivens* remedy where a Border Patrol agent shot and killed an individual across the U.S.-Mexico border without any justification). The Court agrees with the *Rodriguez* dissent – and

11

the other circuit courts to have considered the question – that immigration enforcement cases raise numerous special factors that counsel hesitation before expanding the *Bivens* remedy. *See id*. at 753-758; *see also Tun-Cos*, 922 F.3d at 525-528; *Mirmehdi*, 689 F.3d at 982-82; *Alvarez*, 818 F.3d at 1210.[7]

Medina's claims would require the Court to expand *Bivens* claims to a new context, and special factors are present that counsel the Court to hesitate before expanding *Bivens* claims. Thus, the Court will grant Danaher's motion for summary judgment.[8]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Christopher Danaher's Motion for Summary Judgment [Docket No. 87] is **GRANTED**. It is further

---

[7] Medina argues that the INA does not provide him with an adequate alternative remedy. Docket No. 93 at 10-12. The Court notes that this argument has been rejected by circuit courts that have considered the issue. *See, e.g.*, *Tun-Cos*, 922 F.3d at 526-27 (noting that Congress's "refusal to provide a damages remedy" in the INA "persuasively indicate[s] that Congress did not want to provide a money damages remedy" in this context); *Alvarez*, 818 F.3d at 1209 (concluding that "the congressional decision not to provide a private action for damages was deliberate").

[8] Doe defendants #1-4, who are alleged to be additional "federal employees" or individuals "acting at the direction of federal employees" "who participated in [Medina's] unlawful arrest and detention," *see* Docket No. 26 at 2-3, ¶ 8, remain in this case. *See* Docket No. 86, 88. However, for the reasons articulated in this order, Medina cannot sustain a *Bivens* claim against any of the Doe defendants. Accordingly, the Court will dismiss the claims against the remaining Doe defendants with prejudice. *See Roper v. Grayson*, 81 F.3d 124, 127 (10th Cir. 1996) (holding that, when it is clear from plaintiff's complaint that unnamed defendants would be entitled to summary judgment, the appropriate disposition is to dismiss the unnamed defendants with prejudice).

**ORDERED** that all claims against John/Jane Does 1-4 are **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that judgment shall enter in favor of defendant Christopher Danaher and against plaintiff on all claims. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED March 23, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge